1  Corey M. Eschweiler, Esq.
   Nevada Bar No. 6635
2  Adam D. Smith, Esq.
   Nevada Bar No. 9690
3  Joseph F. Schmitt, Esq.
   Nevada Bar No. 9681
4  GLEN J. LERNER & ASSOCIATES
   4795 South Durango Drive
5  Las Vegas, Nevada 89147
   Telephone: (702) 877-1500
6  Facsimile: (702) 932-7043
   E-mail: ceschweiler@glenlerner.com
7          asmith@glenlerner.com
           jschmitt@glenlerner.com
8  Attorneys for Plaintiff

9                  UNITED STATES DISTRICT COURT

10                       DISTRICT OF NEVADA

11

12 @ THE OFFICE HOLDINGS, INC., a Nevada     )
   corporation,                              )   CASE NO. 2:10-cv-01830-GMN-PAL
                                             )
13              Plaintiff,                   )
           vs.                               )   **PLAINTIFF'S MOTION FOR**
14                                           )   **PRELIMINARY INJUNCTION**
   WAL-MART STORES, INC., a Delaware         )
15 corporation; DOES I - X, inclusive; and ROE )
   CORPORATIONS I - X, inclusive,            )
16                                           )
                Defendants.                  )
17 _____ )

18      Pursuant to the provisions of Fed. R. Civ. P. 65 and 15 U.S.C. §1116, Plaintiff @ THE

19 OFFICE HOLDINGS, INC. ("Plaintiff") moves this Court for an Order enjoining WAL-MART

20 STORES, INC. ("Wal-Mart") and any related persons or entities from further infringing on

21 Plaintiff's registered service marks.

22 . . .

23 . . .

24 . . .

25 . . .

26 . . .

27 . . .

28 . . .

This Motion is based on the attached Memorandum of Points and Authorities, the declaration of Greg Pardee, any Reply brief, and any other pleadings, evidence, or arguments as may be submitted at or prior to the time the matter is submitted to the Court for decision.

GLEN J. LERNER & ASSOCIATES

By: /s/ Corey M. Eschweiler
Corey M. Eschweiler, Esq.
Nevada Bar No. 6635
Adam D. Smith, Esq.
Nevada Bar No. 9690
Joseph F. Schmitt, Esq.
Nevada Bar No. 9681
4795 South Durango Drive
Las Vegas, Nevada 89147
Attorneys for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

In this service mark infringement and dilution case, Plaintiff seeks damages and injunctive relief against Wal-Mart due to Wal-Mart's intentional and unlawful use of Plaintiff's @ THE OFFICE service marks. In particular, Plaintiff holds the registered service marks bearing the name @ THE OFFICE for the sale of office furniture and office supplies. Recently, Wal-Mart has been marketing and selling office furniture and supplies bearing the identical @ THE OFFICE marks. Wal-Mart has no permission to use the marks, despite knowing of Plaintiff's federal registration of its marks and Plaintiff's use of its marks in commerce. In fact, Wal-Mart's owners or employees have accessed Plaintiff's website while their infringing use continues. This conduct is not only outrageous, it is an intentional violation of Plaintiff's rights in the protected marks.

Wal-Mart's infringing use has spilled over to Plaintiff's customers. Plaintiff's customers have been confused as a result of Wal-Mart's counterfeit products. Specifically, what entity is designing, manufacturing, and distributing @ THE OFFICE products. This confusion, and the likelihood of continued confusion, is causing Plaintiff irreparable injury to Plaintiff's reputation and goodwill, including Plaintiff's customers believing Wal-Mart's inferior products were supplied by Plaintiff. This Court must issue the requested injunction to prevent Wal-Mart from further damaging Plaintiff through its intentional violation of federal and state laws.

## II. STATEMENT OF RELEVANT FACTS

### A. Plaintiff's Service Marks

Plaintiff is the owner of various federal service mark applications and registrations relevant to this Motion, namely, U.S. Registration No. 3,551,484 for the word mark @ THE OFFICE with associated symbols and artwork, and U.S. Registration No. 3,561,840 for the word mark @ THE OFFICE in standard characters (together, the "@ THE OFFICE Marks"). Compl. at ¶ 6 & Ex. 1. The @ THE OFFICE Marks are used by Plaintiff in connection with the following goods and services, among others: retail store services featuring office furniture, flooring, wall coverings, artwork, and décor accessories. *Id.* at Ex. 1. Plaintiff is also the owner of significant common law rights in the State of Nevada and elsewhere for the @ THE OFFICE Marks in connection with office furniture and office supply sales, having used @ THE OFFICE Marks in commerce since at least 2006. *Id.* at ¶ 7.

Using the @ THE OFFICE Marks, Plaintiff designs, develops, markets, and sells office furniture and office supplies throughout the United States and world-wide on Plaintiff's website located at www.AtTheOffice.com, its showroom, and its catalog. Compl. at ¶ 3. A printout of the front page of Plaintiff's website as of October 25, 2010 is attached hereto as Exhibit 1. A true and correct copy of relevant pages from the 2008 version of Plaintiff's catalog is attached hereto as Exhibit 2.

### B. Defendant's Intentional Infringing Use of the @ THE OFFICE Marks

In or about the spring of 2010, well after the filing date of Plaintiff's service mark applications that matured into the @ THE OFFICE Marks, Plaintiff discovered that Wal-Mart had been distributing, offering for sale, and/or selling office furniture and office supplies using counterfeit reproductions of the @ THE OFFICE Marks. *Id.* at ¶ 13. For example, Plaintiff received a Wal-Mart advertising circular bearing a counterfeit reproduction of the @ THE OFFICE Marks. *Id.* at ¶ 14 & Ex. 2. As of April 26, 2010, Wal-Mart was displaying a variety of office supplies bearing counterfeit reproductions of the @ THE OFFICE Marks. *See* photo attached as Ex. 3. A basic comparison of Exhibits 2 and 3 demonstrates Wal-Mart is selling product lines identical to Plaintiff's product lines.

Although Wal-Mart has no rights or permission from Plaintiff to use the @ THE OFFICE Marks in any way and is in violation of Plaintiff's right to the @ THE OFFICE Marks, Wal-Mart continues to prominently use the @ THE OFFICE Marks to promote its products. Compl. at ¶¶ 15 & 16. Moreover, Wal-Mart is using the counterfeit @ THE OFFICE Marks with actual knowledge of Plaintiff's rights in and ownership of the @ THE OFFICE Marks. Specifically, Plaintiff's website has received multiple visits from Internet Protocol ("IP") addresses located in Bentonville, Arkansas, the location of the home office of Wal-Mart. *Id.* at ¶ 19. Such visits are likely from the owners, officers, directors, and/or employees of Wal-Mart investigating Wal-Mart's infringing use of the @ THE OFFICE Marks. *Id.* In other words, Wal-Mart knowingly infringed and continues to infringe upon the @ THE OFFICE Marks in willful violation of Plaintiff's rights.

### C. Wal-Mart's Intentional Infringing Use of the @ THE OFFICE Marks Has Caused Confusion Among Consumers

Several customers of Wal-Mart have contacted Plaintiff after visits to Wal-Mart, under the mistaken belief that products bearing an "@theOffice" or similar brand name were manufactured, designed, and/or sold by Plaintiff. Compl. at ¶¶ 24 & 25. For example, Greg Pardee ("Mr. Pardee") contacted Plaintiff after receiving a file cabinet when he believed the keys were missing. *See* Pardee Declaration, attached as Ex. 4, at ¶ 4. The file cabinet was purchased at a Wal-Mart store. *Id.* at ¶ 2. The file cabinet was branded as "@theOFFICE." *Id.* at ¶ 3. In an effort to obtain the keys, Mr. Pardee contacted Plaintiff because he believed Plaintiff manufactured, designed, or sold the file cabinet based on the brand name "@theOFFICE" used by Wal-Mart being identical to the name of Plaintiff. *Id.* at ¶ 5. In other words, the similarity in the name and mark caused confusion as to who designed and sold these products. *Id.* Plaintiff informed Mr. Pardee that Wal-Mart's "@theOFFICE" products were not, in fact, manufactured, designed, or sold by Plaintiff. *Id.* at ¶ 6. It was not until Plaintiff explained the difference in products that Mr. Pardee understood any distinction between Wal-Mart and Plaintiff. *Id.* at ¶ 7. This is not an isolated incident. Several individuals have contacted Plaintiff confused by the distribution or sale of Wal-Mart's counterfeit products. *See* Compl. at ¶¶ 24 & 25.

. . .

. . .

III. ARGUMENT

    A.    **Legal Standard for Preliminary Injunction.**

Plaintiff is entitled to a preliminary injunction if it can demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in [its] favor." *Sammartano v. Carson City*, 303 F.3d 959, 965 (9th Cir. 2002) (citation and internal quotation omitted). "'[T]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Id.* (citation and internal quotation omitted).

"To establish a substantial likelihood of success on the merits, [plaintiffs] must show a fair chance of success." *In re Focus Media, Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004) (citation and internal quotation omitted). "In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612, n.3 (9th Cir. 1989).

As set forth below, Plaintiff enjoys more than a "fair chance of success" on the merits of its claims that give rise to Plaintiff's right to a preliminary injunction in this case. In fact, Plaintiff's irreparable injury should be presumed. Plaintiff is, therefore, entitled to a preliminary injunction in order to prevent Wal-Mart's intentional, unlawful conduct.

    B.    **Plaintiff Will Prevail on the Merits of its Infringement Claims.**

To establish infringement, a plaintiff must establish that its mark is "valid [and] protectable," that the plaintiff is the "senior user" of its mark, and that the defendant's use of plaintiff's mark has "created a likelihood of confusion." *Brookfield Commc'ns Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). "In a close case . . . , doubts are resolved in favor of the senior user." *Dr. Suess Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997).

Here, Plaintiff has a valid and protectable senior mark, and Wal-Mart's use creates a likelihood of confusion.

. . .

. . .

5

1. <u>Plaintiff's @ THE OFFICE Marks are Valid and Protectable.</u>

Registration of a mark with the United States Patent and Trademark Office "constitutes <u>prima facie evidence</u> of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Brookfield*, 174 F.3d at 1047 (emphasis added). Pursuant to the Lanham Act,

> a mark registered on the principal register provided by this Act and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein . . . .

15 U.S.C. § 1115(a).

Plaintiff registered the @ THE OFFICE Marks in 2008. Plaintiff's registration of the @ THE OFFICE Marks constitutes <u>prima facie evidence</u> of the validity of the @ THE OFFICE Marks and Plaintiff's exclusive right to use the mark in connection with office furniture and accessories. The marks, therefore, are presumed valid and protectable, and Plaintiff is entitled to a preliminary injunction to prevent Wal-Mart's intentional and unlawful use of the @ THE OFFICE Marks.

2. <u>Plaintiff is the Senior User of the @ THE OFFICE Marks.</u>

"The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookfield*, 174 F.3d at 1047.

Plaintiff has been using its @ THE OFFICE Marks in commerce since at least 2006. Wal-Mart did not begin using the counterfeit @ THE OFFICE Marks until 2010. Plaintiff's earlier use confirms that it enjoys senior use of its @ THE OFFICE Marks and, as such, has the right to enjoin junior users such as Wal-Mart from using confusingly similar marks in the same industry and market.

3. <u>The *Sleekcraft* Factors Establish a Likelihood of Confusion</u>

In the Ninth Circuit, courts follow the so-called *Sleekcraft* factors to determine the likelihood of confusion. These factors include:

. . .

6

1. strength of the mark;
2. proximity of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. type of goods and the degree of care likely to be exercised by the purchaser;
7. defendant's intent in selecting the mark; and
8. likelihood of expansion of the product lines.

*Sleekcraft,* 599 F.2d at 348-49. "Some *[Sleekcraft]* factors are much more important than others, and the relative importance of each individual factor will be case-specific." *First Franklin Fin. Corp. v. First Franklin Fin., Ltd.,* 356 F. Supp. 2d 1048, 1051 (N.D. Cal. 2005). The similarity of the marks, however, "has always been considered a critical question in the likelihood of confusion analysis." *CSC Brands LP v Herdez Corp.,* 191 F. Supp. 2d 1145, 1149 (E.D. Cal. 2001). "This factor, along with the second and third factors (relatedness of the services and the use of a common marketing channel), constitutes . . . the controlling troika in the *Sleekcraft* analysis." *Id.* Not only does Plaintiff have an overwhelming likelihood of success on the first two elements of its infringement claims, Plaintiff is likely to prevail on <u>all</u> eight *Sleekcraft* factors.

        a.    *Similarity of Marks*

"Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft,* 599 F.2d at 351. "Each must be considered as they are encountered in the marketplace." *Id.* "[S]imilarities weigh more heavily than differences." *Id.* If one word or feature of a mark "is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Ty, Inc. v. Jones Group,* 237 F.3d 891, 898 (7th Cir. 2001).

For example, the court in *AB Electrolux v. Bermil Indus.,* 481 F. Supp. 2d 325 (S.D.N.Y. 2007) concluded that the mark WASCOMAT was confusingly similar to WASCOCLEAN or WASCODRY, justifying the imposition of a preliminary injunction to prevent the defendant's use of the confusingly similar marks. *AB Electrolux,* 481 F. Supp. 2d at 332. The court found that "[t]he prefix Wasco tacked onto the beginning of a syllable is unique and noticeable. It makes

1  WASCOCLEAN, for example, very similar to WASCOMAT." *Id.*

2        Here, the symbol and words used in Wal-Mart's counterfeit reproductions are exactly the
3  same, and in the same order, as the symbol and words used in the @ THE OFFICE Marks. The
4  appearance, sound, and meaning of both uses are identical. Both begin with the @ symbol,
5  followed by "the" and "office." Both are also pronounced identically – "at the office" – and both
6  are used to sell office furniture and supplies. The marks share more than just the same prefix as in
7  AB Electrolux. Rather, the @ THE OFFICE Marks and Wal-Mart's counterfeit "@theOffice"
8  brand share every component. Since the marks are so similar, if not identical, it is not only likely
9  consumers will be confused, they are confused. This Court should issue the requested injunction in
10 order to prevent such confusion.

           b.    *Evidence of Actual Confusion*

12       Actual confusion is not necessary in the Ninth Circuit "to a finding of likelihood of
13 confusion under the Lanham Act." *Acad. of Motion Picture Arts & Scis. v. The Creative House*
14 *Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991). Nonetheless, evidence of actual confusion
15 "is <u>persuasive proof</u> that future confusion is likely." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341,
16 352 (9th Cir. 1979).

17       Wal-Mart's use of the @ THE OFFICE Marks has already created and caused confusion,
18 mistake, or deception as to the source, sponsorship, or approval of Wal-Mart's products. Because of
19 the similarity between the brand name used by Wal-Mart and the @ THE OFFICE Marks, Mr.
20 Pardee, among others, mistakenly believed that Plaintiff was responsible for the manufacture,
21 design, or sale of products they purchased or viewed at Wal-Mart. *See* Pardee Decl. at ¶ 5. Several
22 other individuals have contacted Plaintiff confused by the distribution or sale of Wal-Mart's
23 counterfeit products. *See* Compl. at ¶¶ 24 & 25. The fact that Wal-Mart's use of the counterfeit
24 marks has already caused actual confusion among consumers is persuasive proof future confusion is
25 likely due to Wal-Mart's infringement.

           c.    *Relatedness or Proximity of Products*

27       "Related goods are those products which would be reasonably thought by the buying public
28 to come from the same source if sold under the same mark." *Sleekcraft*, 599 F.2d at 348, n.10.

1  "[T]he [alleged infringer's] use need not be the same as, nor one in competition with, the original
2  use. The question is, are the uses related so that they are likely to be connected in the mind of a
3  prospective purchaser?" *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 992 (C.D. Cal. 2002)
4  (citation omitted). "Related goods are more likely than non-related goods to confuse the public as to
5  the producers of the goods. . . . A diminished standard of similarity is therefore applied when
6  comparing the marks of closely related goods." *Official Airline Guides v. Goss*, 6 F.3d 1385, 1392
7  (9th Cir. 1993) (citing *Sleekcraft*, 599 F.2d at 350).

8      Wal-Mart's counterfeit @ THE OFFICE goods are more than <u>related</u> to products sold by
9  Plaintiff under the @ THE OFFICE Marks – they are <u>identical</u>. For example, Wal-Mart sells file
10 cabinets under the counterfeit @ THE OFFICE Marks. *See* Pardee Decl. at ¶ 3. Plaintiff also sells
11 file cabinets under its registered @ THE OFFICE Marks. *See* Ex. 2 at 204-28. A basic comparison
12 of Exhibits 2 and 3 demonstrates additional examples of identical use, including boxes and trays for
13 desktop organization. These are just examples of identical products sold by both Plaintiff and Wal-
14 Mart under Plaintiff's registered marks.

15     In addition to these specific examples, all of Plaintiff's office furniture and accessories are
16 related to Wal-Mart's @theOFFICE supplies because all of the products are to be used in offices.
17 Consumers would reasonably believe the products are from the same source because they are all
18 office products. In fact, Mr. Pardee, among others, has already mistakenly believed that Wal-Mart's
19 and Plaintiff's products were from the same source. *See* Pardee Decl. at ¶ 5. Since the products
20 offered by Wal-Mart under the counterfeit @ THE OFFICE Marks are related to Plaintiff's
21 products, consumers are likely to be confused by Wal-Mart's intentional, infringing use.

22                     d.    *Wal-Mart's Intent to Deceive*

23     "When an alleged infringer knowingly adopts a mark similar to another's, courts will
24 presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392
25 (9th Cir. 1993). "Registration of a mark on the principal register . . . shall be constructive notice of
26 the registrant's claim of ownership thereof." 15 U.S.C. § 1072.

27     Wal-Mart unquestionably had constructive notice of Plaintiff's ownership of the @ THE
28 OFFICE Marks when it chose the counterfeit marks because of Plaintiff's prior registration of the @

9

1  THE OFFICE Marks with the United States Patent and Trademark Office. This is sufficient to
2  establish a presumption that Wal-Mart intended to deceive the public. Further, it is likely that Wal-
3  Mart's owners, officers, directors, and/or employees have recently visited Plaintiff's website, most
4  likely to investigate Plaintiff's @ THE OFFICE Mark. Despite this "investigation," Wal-Mart
5  continues to utilize the infringing mark following its actual and constructive notice of Plaintiff's
6  ownership of the @ THE OFFICE Marks. This Court must presume Wal-Mart's intent to deceive
7  the public by its knowing adoption and use of the counterfeit @ THE OFFICE Marks.

       e.  *Marketing Channels Used*

"The marketing channels factor requires a court to consider the similarities or differences between the predominant customers of the parties' respective goods or services." *Gray v. Meijer, Inc.*, 295 F.3d 641, 649 (6th Cir. 2002). "The parties' outlets and customer bases need not be identical; rather, some degree of overlap must be present before the factor favors a finding of likelihood of confusion." *Glow Indus., Inc. v. Jennifer Lopez*, 252 F. Supp. 2d 962, 1000 (C.D. Cal. 2002).

Plaintiff markets and sells its products world-wide on the Internet, nation-wide via its catalog, and through its showroom. Wal-Mart markets its office products branded with the counterfeit @ THE OFFICE Marks at most, if not all, of its over 8,500 stores world-wide. Both companies compete for customers that seek office furniture and/or office supplies. Since Wal-Mart and Plaintiff are competing for similar or identical customers with respect to their office furniture and supplies, it is more than likely that consumers will be confused by Wal-Mart's infringement.

       f.  *Degree of Purchaser Care*

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353. "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely." *Id.*

The typical buyer of office furniture and office supplies would be confused by Wal-Mart's use of Plaintiff's marks because Wal-Mart and Plaintiff offer identical products under an identical mark. In fact, at least one "typical buyer" of office supplies has already been confused by Wal-

1  Mart's use of counterfeit @ THE OFFICE Marks. *See* Pardee Decl. at ¶ 5. Such confusion is
2  persuasive proof that consumers are likely to be confused by Wal-Mart's wrongful conduct.

3            g.    *Likelihood of Expansion in Product Lines*

4  "A strong likelihood that either party may expand his business to compete with the other
5  favors a finding of infringement." *Goss,* 6 F.3d at 1394. Where the Court has already determined
6  the parties' goods are closely related, this factor is irrelevant. *See Playboy Enters. v. Netscape*
7  *Comm'ns Corp.,* 354 F.3d 1020, 1029 (9th Cir. 2004) ("Because the [defendant's] and [the
8  plaintiff's goods] are already related . . . this factor is irrelevant.").

9  As set forth above, Wal-Mart's goods and Plaintiff's goods are closely related and identical
10 in some cases. The likelihood of expansion by either Plaintiff or Wal-Mart is, therefore, irrelevant.
11 Should the Court nonetheless consider this factor, it would weigh in favor of Plaintiff. Both
12 Plaintiff and Wal-Mart are sufficiently established and capitalized to expand their product lines at
13 any time. In fact, Plaintiff's business model forecasted growth and expansion through additional
14 showrooms, licensees, and product lines.

15           h.    *Strength of Marks*

16 The strength of a mark is demonstrated by "extensive advertising, length of time in business,
17 public recognition and uniqueness." *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1179
18 (9th Cir. 1988). The stronger the mark, "the greater protection the mark is accorded by trademark
19 laws." *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1207 (9th Cir. 2000).

20 Plaintiff engages in extensive, world-wide advertising using its @ THE OFFICE Marks on
21 the Internet, in its catalog, and in its showroom. *See* Ex. 1 & Ex. 2. Plaintiff has been using the @
22 THE OFFICE Marks in commerce since at least 2006. The @ THE OFFICE Marks are strong
23 enough to prevent the intentional, unlawful misappropriation of Plaintiff's ownership interest in the
24 @ THE OFFICE Marks by Wal-Mart.

25     **C.**    **Plaintiff Will Prevail on its False Designation of Origin and Unfair Competition Claims.**
26
27 "An action for unfair competition under [state law] is 'substantially congruent' to a
28 trademark infringement claim under the Lanham Act." *Acad. of Motion Picture Arts,* 944 F.2d at
1457 (citing *International Order of Job's Daughters,* 633 F.2d 912, 916 (9th Cir. 1980)). Under

11

1  both claims, "the 'ultimate test' is 'whether the public is likely to be deceived or confused by the
2  similarity of the marks.'" *Id.* (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178
3  (9th Cir. 1988)).

4  For the reasons explained above, Plaintiff is likely to prevail on its false designation of
5  origin and unfair competition claims as well as its service mark infringement claim. Wal-Mart's
6  intentional and unlawful use of the @ THE OFFICE Marks has already created and caused
7  confusion, mistake, or deception as to the source, sponsorship, or approval of Wal-Mart's products.
8  Moreover, a review of the *Sleekcraft* factors demonstrates that there is a high likelihood of future
9  deception or confusion of consumers caused by Wal-Mart's intentional and unlawful use of the @
10 THE OFFICE Marks. For these reasons, Plaintiff will prevail on its false designation of origin and
11 unfair competition claims and is entitled to an injunction to prevent Wal-Mart's unlawful conduct.

12 **D.   Plaintiff is Suffering, and Will Continue to Suffer, Irreparable Harm.**

13 "In trademark infringement or unfair competition actions, once the plaintiff establishes a
14 likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if
15 injunctive relief is not granted." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612, n.3 (9th
16 Cir. 1989).

17 Plaintiff has demonstrated existing, actual confusion caused by Wal-Mart's unlawful use of
18 Plaintiff's @ THE OFFICE Marks and a high likelihood of continued confusion. For these reasons,
19 Plaintiff's irreparable harm is presumed, and the Court must issue the requested injunction to
20 prevent Plaintiff from continuing to suffer irreparable harm as a result of Wal-Mart's unlawful
21 conduct.

22 Even if Plaintiff were not entitled to a presumption of irreparable harm, it is clear that
23 Plaintiff suffers harm each day Wal-Mart continues to use marks confusingly similar to the @ THE
24 OFFICE Marks. Plaintiff's loss of control over its service marks and the corresponding injury to its
25 customer goodwill constitute independent sources of irreparable harm that support the issuance of
26 injunctive relief. *See, e.g., Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944
27 F.2d 597, 603 (9th Cir. 1991) ("[W]e have also recognized that intangible injuries, such as damage
28 to ongoing recruitment efforts and <u>goodwill, qualify as irreparable harm</u>.") (citing *Regents of Univ.*

*of Cal. v. American Broadcasting Cos.*, 747 F.2d 511, 519-20 (9th Cir. 1984)) (emphasis added). As one court has noted, a party's

> mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even [if] the borrower does not tarnish it, or divert any sales by its use . . . .

*Opticians Ass'n of Am. v. Ind. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (quoting *Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928).

This case is no different. A customer who is dissatisfied with the quality of Wal-Mart's products may wrongfully attribute that negative experience to Plaintiff's products, irreparably harming Plaintiff's reputation and the goodwill associated with the @ THE OFFICE Marks. In fact, this scenario has already occurred; Mr. Pardee mistakenly believed that the defective file cabinet branded "@theOFFICE" was sold by Plaintiff. *See* Pardee Decl. at ¶ 5. Instead, Wal-Mart sold the defective product. Once that harm occurs, it cannot be undone. Plaintiff is, therefore, entitled to an injunction to prevent further harm caused by Wal-Mart's unlawful conduct.

### E. The Balance of Hardships Tips in Plaintiff's Favor.

Although the general rule provides for a balancing of hardships, the Court need not conduct that analysis when an infringer's conduct has been willful. In other words,

> [t]he courts will not shy away from issuing such [preliminary injunctive] relief where to do so would be to aid a second comer who has sought to trade upon the efforts and good will of the first comer. . . . Advantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed..

*Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977); *see also Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1281 (C.D. Cal. 2008) ("When considering the balance of equities, courts will not shy away from issuing preliminary injunctive relief, "where to do so would be to aid a second comer who has sought to trade upon the efforts and good will of the first comer."). The injury that Wal-Mart may suffer if the Court issues an injunction should be discounted because Wal-Mart brought the injury upon itself. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("By virtue of its recalcitrant behavior, the [party opposing the injunction] can hardly

claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself.").

This is the precise issue in this case: Wal-Mart's wrongful conduct occurred after it had actual and constructive notice of Plaintiff's ownership of the @ THE OFFICE Marks. In short, Wal-Mart's conduct should be considered willful and no balance between Plaintiff's and Wal-Mart's hardships is necessary.

Regardless, a balance of the hardships still tips in Plaintiff's favor. Wal-Mart's office furniture and office supply products are a small part of Wal-Mart's overall product line, sales, and revenue. Plaintiff's office furniture and office supply products are a majority of Plaintiff's products. In other words, Wal-Mart's use threatens Plaintiff's entire existence. Continuing use by Wal-Mart could tarnish Plaintiff's brand and reputation so completely so as to cause Plaintiff to close its doors. This clearly weighs in favor of Plaintiff and an injunction to prevent such irreparable harm.

### F.  A Preliminary Injunction Serves the Public Interest.

A preliminary injunction prohibiting the harmful conduct serves the public interest by avoiding confusion to customers. "The wording of the district court's injunction reflects the usual public interest concern in trademark cases: avoiding confusion to consumers." *Internet Specialties West, Inc. v. Milon-Digiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009).

Plaintiff wants to stop any continued confusion and infringing conduct. The Court's issuance of the requested injunction will prevent the confusion of consumers as to the source of @ THE OFFICE goods. In short, an injunction is required to prevent further harm to Plaintiff and the consuming public.

### G.  Plaintiff's Bond Should be Minimal.

Plaintiff should be required to post a minimal bond in this case. Wal-Mart's use of the @ THE OFFICE Marks is willful and intentional, and so blatantly infringes on Plaintiff's @ THE OFFICE Marks, that a minimal bond is required. Plaintiff, therefore, requests that the Court set a bond of $10,000.

. . .

. . .

**H.      A Preliminary Injunction Order Should Issue Immediately.**

Wal-Mart's infringing use must be immediately enjoined. Plaintiff is entitled to an Order:

1. Preliminarily enjoining and restraining Wal-Mart, all entities under its control, as well as its parents, subsidiaries, licensees, owners, directors, officers, partners, assigns, related entities, predecessors, successors, employees, representatives, trustees, receivers, agents, and any other persons or entities acting on behalf of Wal-Mart or with Wal-Mart's authority, from using Plaintiff's @ THE OFFICE Marks or any other mark that dilutes or is confusingly similar to Plaintiff's @ THE OFFICE Marks;

2. Preliminarily enjoining and restraining Wal-Mart, all entities under its control, as well as its parents, subsidiaries, licensees, owners, directors, officers, partners, assigns, related entities, predecessors, successors, employees, representatives, trustees, receivers, agents, and any other persons or entities acting on behalf of Wal-Mart or with Wal-Mart's authority, from representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake, or deception among members of the public or members of the trade as to the source, sponsorship, affiliation, or approval of Wal-Mart's goods and services;

3. Directing that Wal-Mart, at its own expense, recall all of the marketing, promotional, and advertising materials, edit any websites, and remove from its Wal-Mart stores any of its inventory and/or products, that bear or incorporate Plaintiff's @ THE OFFICE Marks, or any other mark that dilutes or is confusingly similar to Plaintiff's @ THE OFFICE Marks; and

4. Directing, pursuant to 15 U.S.C. §1116(a), that Wal-Mart file with this Court and serve upon Plaintiff, within thirty (30) days after service upon Wal-Mart of a preliminary injunction in this action, a written report by Wal-Mart, given under oath, setting forth in detail the manner in which Wal-Mart has complied with the injunction.

IV.  **CONCLUSION**

For the foregoing reasons, Plaintiffs Motion for Preliminary Injunction should be granted.

                                      GLEN J. LERNER & ASSOCIATES

By: /s/ Corey M. Eschweiler
     Corey M. Eschweiler, Esq.
     Nevada Bar No. 6635
     Adam D. Smith, Esq.
     Nevada Bar No. 9690
     Joseph F. Schmitt, Esq.
     Nevada Bar No. 9681
     4795 South Durango Drive
     Las Vegas, Nevada 89147
     Attorneys for Plaintiff